## UNIVERSITY LIFE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,

v.

## UNIMARC LTD. and George C. Huff, Defendants-Appellants.

### No. 82–1891.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1982.

Decided Jan. 12, 1983.

Rehearing Denied Feb. 10, 1983.

Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants-appellants.

James A. McDermott, Barnes & Thornburg, Indianapolis, Ind., for plaintiff-appellee.

* Of the Southern District of New York.

Before PELL and POSNER, Circuit Judges, and BONSAL,* Senior District Judge.

POSNER, Circuit Judge.

This appeal from an order compelling arbitration requires us to decide two principal questions relating to the United States Arbitration Act of 1925, as amended, 9 U.S.C. §§ 1–14. Is an order under 9 U.S.C. § 4 to arbitrate appealable if the district court, after issuing it, retains jurisdiction of the case in order to be able to provide any additional relief that may later become appropriate? If it is appealable, was the district court in this case right to enter such an order when a pending lawsuit between the parties raised antitrust issues, which are not arbitrable?

In 1975 Unimarc Ltd., a California company, agreed to market life insurance for University Life Insurance Company of America, an Indiana company. Two years later University Life signed a coinsurance agreement with Unimarc's president and major stockholder, George Huff, designed to compensate him for his services to University Life by setting up a life insurance company in Huff's name that University Life would support in various ways. This agreement, like the marketing agreement, required arbitration of any dispute arising under it.

University Life and Unimarc entered into a second marketing agreement in 1980 under which all rights created by the first agreement were terminated unless expressly preserved. The agreement provided for arbitration in Indianapolis, Indiana of any disputes arising under the agreement. At about this time Huff and University Life had a dispute over the coinsurance agreement. Huff demanded arbitration and arbitrators were appointed, but Huff refused to submit his claims to arbitration.

On September 1, 1981, University Life gave Unimarc notice that it was terminat-

ing the second marketing agreement effective December 31. In November it demanded arbitration of seven issues having to do with its rights under the agreement, such as whether it could hire more marketing agents without having to pay Unimarc commissions.

On December 2 Unimarc and Huff filed a diversity suit in California against University Life and related entities, alleging that the defendants had made false representations between 1975 and 1980 and had wrongfully interfered with the two marketing agreements. University Life responded to the suit by appointing its arbitrator, by moving to stay the California action pending arbitration, and, on December 29, by filing the present case, a petition in federal district court in Indiana to compel arbitration.

Unimarc and Huff promptly amended their complaint in the California suit to add antitrust counts. On January 12, 1982, University Life appointed Unimarc's arbitrator, as it was entitled to do under the arbitration clause in the second marketing agreement because Unimarc had failed to do so within the period allowed by the clause. The next day, the district court in California granted University Life's application for a stay. Unimarc and Huff have appealed that order to the Ninth Circuit.

After an evidentiary hearing, the district court in Indiana granted University Life's petition for arbitration and entered the order from which Unimarc and Huff have appealed to us. The order (1) requires University Life and Huff to file with the clerk of the court a list of the disputes they want to arbitrate relating to the coinsurance agreement, and then proceed to arbitration before the panel already selected for that arbitration; (2) requires University Life and Unimarc to file a similar list relating to disputes under the second marketing agreement, and then proceed to arbitration in Indianapolis before the two arbitrators already selected (by University Life) plus a third arbitrator to be selected by the two in accordance with the arbitration clause of the agreement; and (3) "retain[s] jurisdic-

tion of this matter pursuant to 9 U.S.C. § 4 (1976) to resolve any further disputes between the parties arising under or relating to provisions of the Coinsurance Agreement or the Second Marketing Agreement governing arbitration of disputes and to enforce any and all decisions and awards arising out of the arbitration proceedings to be conducted in accordance with paragraphs 1 and 2 of this Order."

If all the court had done was to order the parties to arbitrate, its order clearly would have been final, and therefore appealable under 28 U.S.C. § 1291. *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 782 (3d Cir.1975); *N.V. Maatschappij voor Industriele Waarden v. A.O. Smith Corp.*, 532 F.2d 874, 875–76 (2d Cir.1976). True, the order would not have resolved the underlying dispute between the parties but merely have decided who should resolve it. But it would have been final so far as the proceeding before the court, a proceeding to compel arbitration, was concerned, just as an order dismissing a complaint because the parties are in the wrong forum is final. And it should make no difference if in addition the court, as it did here, orders the parties to file with it a list of the issues to be arbitrated, so that there will be a judicial record of the scope of the order.

█ It is equally clear that if University Life were seeking some other judicial remedy against Unimarc and Huff besides an order to arbitrate, the order would not be appealable. *Whyte v. THinc Consulting Group Int'l*, 659 F.2d 817, 818 (7th Cir.1981). As with any complaint that contains multiple claims, the disposition of one is not a final judgment and is therefore not appealable unless the district court certifies it for a direct appeal under Rule 54(b) of the Federal Rules of Civil Procedure, which was not done here.

This case is in between the two we have put. University Life was proceeding only under 9 U.S.C. § 4, but the district court, besides issuing an order to arbitrate, retained jurisdiction of the case both to resolve any further disputes over arbitrability that might arise and to enforce any awards

that might be made in the arbitration proceedings. We must decide whether the retention of jurisdiction for either purpose made the order nonappealable. *Robbins v. George W. Prescott Publishing Co.,* 614 F.2d 3, 5 (1st Cir.1980), is authority that it did not ("nothing was left for the court but supervision, so that there was, in effect, a final order under section 1291"), but the passage we have quoted is the entire discussion of the issue.

A court that issues a permanent injunction will often retain jurisdiction lest the defendant violate the injunction or changed circumstances require its modification at some future date. Since injunctions are appealable regardless of finality, 28 U.S.C. § 1292(a)(1), it is not important whether retaining jurisdiction deprives a permanent injunction of its finality. It may not be important here either. True, interlocutory orders issued under 9 U.S.C. § 4 have been held not to be mandatory injunctions, on the practical ground emphasized in *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 84–85 (2d Cir.1961), that otherwise section 1292(a)(1) would allow piecemeal appeals, which would impair one of the principal advantages claimed for arbitration—speed. Presumably the same conclusion would be reached if the order concluded the section 4 proceeding but left other claims still pending; otherwise the holding in *THinc* would be circumvented. But these considerations are inapplicable to an order to arbitrate when no other claims remain in the case. The courts have described such orders in other contexts as mandatory injunctions. *Sinclair Ref. Co. v. Atkinson,* 370 U.S. 195, 212, 82 S.Ct. 1328, 1337, 8 L.Ed.2d 440 (1962); *Local 344 Leather Goods Union v. Singer Co. Piecework Control Systems,* 84 F.R.D. 424 (N.D.Ill.1979). The description is apt; and it is hard to see why retention of jurisdiction following entry of an order to do something—a mandatory injunction—should have any greater impact on appealability than in the case of an order not to do something.

But it is not critical whether the order to arbitrate in this case is appealable under section 1292(a)(1). Retaining jurisdiction would not affect the finality of a permanent injunction, and neither should it affect the finality of an order to arbitrate. Therefore, even if there were no section 1292(a)(1) both types of order would be appealable under 28 U.S.C. § 1291 as final judgments. The purpose of the final-judgment rule is to determine the best time for an appeal. If the appeal is postponed too long, the appellant may be deprived of a meaningful appellate review and the parties and the trial court harrowed by lengthy proceedings that could have been averted if the error on which they were founded had been corrected by the appellate court earlier. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). An order is therefore ripe for appeal as soon as it is apparent that subsequent rulings of the trial court are not going to moot the issues that the appellant would like to present, or raise new issues that the appellate court could most efficiently decide when reviewing the earlier ruling. *Williams v. Mumford,* 167 U.S.App. D.C. 125, 511 F.2d 363, 366 (1975); *United States v. Mississippi Light & Power Co.,* 638 F.2d 899, 903 (5th Cir.1981). These considerations explain why a defendant who loses in the liability phase of a bifurcated trial has no right to appeal until the damages have been fixed, at which time the defendant can bring up both liability and damage issues in one appeal. *Western Geophysical Co. of America v. Bolt Associates, Inc.,* 463 F.2d 101, 102 (2d Cir.1972). But when a permanent injunction is entered, the possibility that further issues may arise in the course of administering the injunction is not a sufficient reason to delay the appeal. Such issues may never arise; and if they do, it may not be for many years, by which time the issue of the validity of the injunction may be hopelessly stale.

Viewed in this practical light, the order appealed from in this case is final. True, there may be further disputes over arbitrability. The district court has told the parties to arbitrate any issue they want to arbitrate under the two contracts in issue, but if a party submits an issue that

does not arise under either contract the court may be asked to decide whether that issue is arbitrable. But then again no such issue may arise. And though the district court has retained jurisdiction to enforce any arbitration awards if and when made, it is possible that no awards will be made—that the arbitrators will resolve all issues against the claimants—in which event judicial enforcement will never be sought. There is no better time to appeal than now.

The situation actually is little different from what it would be if the district judge had not retained jurisdiction. If he had ordered arbitration, and left it at that, it would still be open to the parties—as it would be to the parties to any completed litigation—to go back to him for interpretation or modification of an order, the order to arbitrate, having an ongoing effect; and it would still be possible for University Life, or Unimarc, or Huff, if any of them prevailed before the arbitrators on any of their claims, to bring a fresh proceeding in the court below, under 9 U.S.C. § 9, to enforce the award. Yet if the district court had not formally retained jurisdiction, neither possibility would have made the order to arbitrate nonappealable. It should make no difference that, instead, the court, presumably to save the parties the bother of having to file separate actions if they want to modify or enforce the order compelling arbitration, formally retained jurisdiction (as in *Else v. Inflight Cinema Int'l*, 465 F.Supp. 1239, 1245 (W.D.Pa.1979)), with the result that any request to modify or enforce the order will be made by motion in an existing case rather than by filing a separate complaint. The difference in procedures is minor, technical, and unrelated to the purpose of the final-judgment rule; it should not affect appealability.

This conclusion is supported by cases dealing with the effect of retention of jurisdiction on finality in other contexts. Moore cites several cases where courts have "recognized that if a decree or order otherwise meets the requirements of finality leave given to apply at the foot of the decree for such further order as may be necessary to the due execution of the decree, or a reser-

vation in the order to make further orders does not destroy the finality of the decree or order." 9 Moore's Federal Practice ¶ 110.08[1] at p. 118 (1982). The *Mississippi Power & Light* case, cited earlier, is an extreme example: the district court withheld issuance of an injunction, hoping that the defendant would comply voluntarily with its decision, while retaining jurisdiction to issue an injunction should the defendant not comply; and the court of appeals held that the decision was a final judgment within the meaning of section 1291. 638 F.2d at 903. Also relevant are the cases on whether retention of jurisdiction to award attorney's fees to the prevailing party destroys finality. Although the circuits are divided on this question, this circuit has answered it with a firm "no." See, e.g., *Crowder v. Telemedia, Inc.*, 659 F.2d 787 (7th Cir.1981) (per curiam).

■ We conclude that we have jurisdiction of the appeal, and can turn now to the merits, where the principal issue is whether the district court should have refrained from ordering arbitration when there was a pending lawsuit between the parties raising nonarbitrable issues. Unimarc and Huff appeal to the "permeation" doctrine, whereby a district court may stay an action to compel arbitration if nonarbitrable issues are so inseparable from the subject matter of the arbitration that the arbitrators would find it difficult to do their job without making findings that would have collateral estoppel effect in the trial of the nonarbitrable issues. See, e.g., *Cobb v. Lewis*, 488 F.2d 41, 47–50 (5th Cir.1974); *Dickinson v. Heinhold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981).

The suit brought by Unimarc and Huff in California raises issues of state tort and contract law and federal antitrust law. The tort and contract issues may or may not be within the scope of the arbitration clauses in the coinsurance and second marketing agreements but they are arbitrable in the sense that an agreement to arbitrate them would be enforceable. Federal antitrust issues, however, are nonarbitrable in

just that sense. *Applied Digital Technology, Inc. v. Continental Casualty Co.*, 576 F.2d 116, 117 (7th Cir.1978). They are considered to be at once too difficult to be decided competently by arbitrators—who are not judges, and often not even lawyers—and too important to be decided otherwise than by competent tribunals. See *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 826–27 (2d Cir.1968). The root of the doctrine is in the same soil as the principle, announced in *Blumenstock Bros. Adv. Agency v. Curtis Pub. Co.*, 252 U.S. 436, 440–41 (1920), that federal antitrust suits may not be brought in state courts. And the doctrine has been held, see *Overseas Motors, Inc. v. Import Motors Ltd.*, 375 F.Supp. 499, 518–23 (E.D.Mich.1974), though more often assumed, see, e.g., *Dickinson v. Heinhold Securities, Inc., supra*, 661 F.2d at 644; cf. 2 Restatement of Judgments (Second) § 84 at p. 290 (1982), to share the same rather anomalous exception that findings of fact—at least some findings of fact—made by a tribunal that lacks antitrust jurisdiction will nevertheless be given collateral estoppel effect in a subsequent antitrust suit between the parties. But for that exception it would be difficult to see how Unimarc and Huff could be prejudiced by being forced into arbitration before the antitrust suit is tried.

Since collateral estoppel is a flexible doctrine, we are skeptical whether there is any rigid rule that arbitration *must* be stayed if the issues to be arbitrated overlap with antitrust issues in a pending lawsuit, and note that the permeation doctrine is usually described in discretionary rather than mandatory terms, see, e.g., *Dickinson, supra*, 661 F.2d at 644. An alternative to a stay is for the court in the antitrust case not to give collateral estoppel effect to the arbitrators' findings of fact, and it is hard to see why one alternative is always superior to the other. A court that has to decide whether arbitration should go forward immediately or be stayed to await the outcome of the antitrust case ought therefore to consider without preconceptions what ordering of arbitration and antitrust litigation will produce the quickest, soundest resolution of the complete controversy between the parties. In this case, the fact that the district court in California has stayed the antitrust suit may be decisive. If the court below had refused to order arbitration, resolution of the controversy among the parties would have been paralyzed. Better to compel arbitration and let the district court in California worry, after arbitration is completed and the lawsuit in that court resumes, how much weight to give the arbitrators' findings of fact in deciding the antitrust issues.

Even if there were an ironclad rule that arbitration must be stayed when antitrust issues permeate the issues to be arbitrated, the rule would not be activated by mere allegations of an antitrust violation. See, e.g., *N.V. Maatschappij, supra*, 532 F.2d at 876–77. Otherwise a party to an arbitration agreement who wanted to delay arbitration as long as possible could achieve his end simply by filing a frivolous antitrust suit—which seems to be what happened here. The original complaint filed by Unimarc and Huff did not mention antitrust. Only after University Life petitioned for an order to arbitrate did Unimarc and Huff file an amended complaint with antitrust allegations. More important than the timing is the fact that those allegations are threadbare—quite apart from the issue, which we need not consider, whether University Life has a good defense based on the antitrust exemption in the McCarran-Ferguson Act, 15 U.S.C. § 1012.

The antitrust allegations are laid under section 1 of the Sherman Act, 15 U.S.C. § 1, and charge a conspiracy "among the defendants to embark upon a plan and scheme, individually and in conspiracy with others, to compete unfairly with plaintiffs, to obtain and appropriate new products and marketing techniques which plaintiffs developed, to cause Unimarc's agents to terminate their relationships with Unimarc after Unimarc recruited and trained said agents at great expense for the purpose of causing said agents to enter into a direct relationship with University Life, and to injure or destroy Unimarc as a competitor

by impairing Unimarc's ability to compete in interstate commerce." This charge is elaborated at some length but almost all the specifics relate to the various steps that University Life allegedly took to lure away Unimarc's agents and set up its own marketing arm to replace Unimarc.

■ The named conspirators besides University Life are all either corporate affiliates of University Life or officers of it or them. Their inclusion in the complaint adds little of antitrust substance. A conspiracy between a corporation and its officers is not actionable under section 1 of the Sherman Act. *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 82–84 (9th Cir.1969); *H & B Equipment Co. v. International Harvester Co.*, 577 F.2d 239, 244 (5th Cir.1978). And the complaint does not allege that the affiliates, despite being owned in common, hold themselves out as competitors, as is probably required for a conspiracy among affiliated corporations to be a per se violation of the antitrust laws. *United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86, 116, 95 S.Ct. 2099, 2116, 45 L.Ed.2d 41 (1975). It does not even allege that they are "held out as distinct legal entities." *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir.1980).

The complaint also names 50 John Doe conspirators. Presumably they are the agents whom Unimarc believes that University Life has succeeded in luring away from Unimarc. The main parties to the alleged conspiracy are thus University Life and the agents it is accused of stealing from Unimarc.

■ If a manufacturer becomes dissatisfied with one of his distributors and appoints another distributor to replace the first, there is an agreement between the manufacturer and the second distributor, and so the threshold requirement of section 1, that there be an *agreement* in restraint of trade, is satisfied. But far from being illegal per se, such agreements usually are perfectly legal under the antitrust laws. See, e.g., *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, *supra*, 416

F.2d at 78. Nor is the manufacturer forbidden to go a step further and bring the distribution formerly performed by an independent distributor of his product in house. Vertical integration—the performance within one firm of two or more steps in the chain of production and distribution—does not violate the Sherman Act, *United States v. Columbia Steel Co.*, 334 U.S. 495, 525–26, 68 S.Ct. 1107, 1123, 92 L.Ed. 1533 (1948); *Anderson Foreign Motors, Inc. v. New England Toyota Distributors, Inc.*, 475 F.Supp. 973, 986 (D.Mass.1979), though if accomplished by merger it may raise questions under section 7 of the Clayton Act, 15 U.S.C. § 18. Firms constantly face "make-or-buy" decisions—that is, decisions whether to purchase a good or service in the market or to produce it internally—and ordinarily the decision, whichever way it goes, raises no antitrust question.

■ It adds nothing to allege that University Life "stole" Unimarc's agents to set up its internal marketing arm—that is, wrongfully interfered with Unimarc's contracts with those agents. Unfair competition in the tort sense does not violate the federal antitrust laws, *Havoco of America, Ltd. v. Shell Oil Co.*, *supra*, 626 F.2d at 555, and to convert a claim of unfair competition into a federal antitrust claim requires more than the addition of antitrust boilerplate, cf. *Parmelee Transport. Co. v. Keeshin*, 292 F.2d 794, 804 (7th Cir.1961). It requires, as with any other allegation that does not come within one of the per se rules, a showing—at this stage an allegation at least—that the defendant's conduct was likely to cause competitive injury in the antitrust sense. Unfair competition is, by definition, injurious to the individual competitor who is its victim. But competition in the antitrust sense signifies not the preservation of all existing competitors but the maintenance of a sufficient number to assure that consumers get the best possible quality of product at the lowest possible price. *Products Liability Ins. Agency, Inc. v. Crum & Forster Ins. Cos.*, 682 F.2d 660, 663–64 (7th Cir.1982).

There is no allegation that even the complete destruction of Unimarc, and its replacement by an internal marketing subsidiary of University Life staffed by Unimarc's former agents, would harm consumers of life insurance. The complaint does not indicate either University Life's share of some relevant geographical market for life insurance or Unimarc's share of some relevant geographical market for the marketing of life insurance, so we are free to speculate that University Life is one of many companies of equal size engaged in writing life insurance and Unimarc one of many competitors of equal size engaged in marketing it. If so, the destruction of Unimarc by University Life, though by tortious means and for malicious ends, would not rise to the level of an antitrust violation; it would have no appreciable effect on competition, viewed as a state in which consumer interests are well served rather than as a process of rivalry that is diminished by the elimination of even one tiny rival. That "there's a special providence in the fall of a sparrow," *Hamlet,* Act V, sc. II, line 232, is not the contemporary philosophy of antitrust.

 True, in a regime of notice pleading Unimarc and Huff's antitrust allegations may (McCarran-Ferguson questions aside) survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure—a question for the federal courts in California and not for us. And if they do not, still Unimarc and Huff might be allowed to file a second amended complaint—again not a question for us. The first amended complaint is all the district court had and all we have on which to base an assessment of the antitrust issues in this case; judging from that complaint, those issues are insubstantial and thus provide no basis for refusing to order arbitration.

Unimarc and Huff raise other issues, having to do with the scope of the arbitration clause and the form of University Life's demand for arbitration, but they are not substantial enough to warrant discussion.

AFFIRMED.

## ON PETITION FOR REHEARING

These appellants have filed a petition for rehearing and motion to modify our mandate pursuant to our decision of January 12, 1983, of this appeal. The petition-motion seeks to bring up to us facts occurring *after* oral argument in this case (see affidavit attached to petition-motion referring to discussions, correspondence, etc., in December 1982 and January 1983; oral argument was November 5). The petition-motion should be directed to the district court, which has retained jurisdiction of the case and can render whatever supplemental relief is lawful and appropriate on the basis of changed circumstances.

The petition for rehearing is DENIED.