Richard J. **KOWALSKI** and Hoffman News Agency, et al.,
Plaintiffs–Appellants,

v.

**CHICAGO TRIBUNE COMPANY**,
Defendant–Appellee.

No. 88–1626.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1988.
Decided July 22, 1988.

Paul E. Slater, Sperling, Slater & Spitz, P.C., Chicago, Ill., for plaintiffs-appellants.

James A. Klenk, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Eighty-four former distributors of the *Chicago Tribune* brought this suit against the *Tribune*'s publisher, charging breach of contract and violation of the antitrust laws. The district court refused to grant a preliminary injunction, and the plaintiffs (apart from those who have settled) have appealed. See 28 U.S.C. § 1292(a)(1).

Early in this decade the plaintiffs signed contracts making them independent distributors of the *Tribune* in defined areas, mostly in Chicago's suburbs. This meant that the plaintiffs bought copies of the newspaper from the defendant and resold them to home subscribers and other retail purchasers in their areas. The contracts are uniform and contain elaborate provisions regarding termination—a feature that was necessary since the contracts were to run for ten years. Each contract authorizes the Tribune Company to terminate it "at any time upon thirty days' written notice if such termination is made pursuant to notification sent simultaneously to [all the distributors], announcing a change by Publisher in its method of sale and distribution," provided that the publisher simultaneously "offer[s] to Distributor an alternate means of participation in servicing subscribers in Distributor's Area of Primary Responsibility, either as agent or employee." But the Tribune Company must compensate a terminated distributor for the loss of his contractual rights. If the parties cannot agree on the value of those rights the matter must be submitted to arbitration for a determination of their value, and if the arbitrator decides that the termination was not for "just cause" he is to add 20 percent to the distributor's compensation, as damages. The contracts make arbitration the "exclusive remedy to resolve any dispute concerning the termination of a Distributor," the distributors having "expressly" waived any "right to any remedy in a court of law." Finally, the contracts forbid the arbitrators to reinstate a terminated distributor.

In the fall of last year the Tribune Company announced that it was going over to a "delivery agent" system, and offered the plaintiffs agency contracts in place of their independent-distributor contracts, which it announced it was terminating. Under the agency contract the Tribune Company would fix the retail price of the *Tribune,* assume the risk of loss or nonpayment of newspapers, assume responsibility for customer complaints, and purchase and lease back the principal assets of the (former) distributors. The plaintiffs declined the offer and instead brought this suit to enjoin their termination, contending that it is part of an illegal price-fixing scheme (presumably embodied in the agency contracts), and also a breach of contract because the change from independent distribution to agency distribution is not a change in the publisher's "method of sale and distribution." The Tribune Company has replaced the plaintiffs with new agents, each of whom handles a small number of subscribers and has signed the agency contract that the plaintiffs refused to sign. The parties agree that the plaintiffs can still obtain arbitration if they are dissatisfied with the defendant's valuation of their lost rights under the terminated contracts.

■ A request for a preliminary injunction is evaluated in accordance with a "sliding scale" approach: the more the balance of irrevocable harms inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction. See, e.g., *Curtis v. Thompson,* 840 F.2d 1291, 1296 (7th Cir.1988); *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589, 593–94 (7th Cir.1986). The common sense of the approach is shown by the limiting case, in which the injunction would do no harm at all to the defendant but denial of the injunction would wreak massive and irrevocable harm on the plaintiff; even if the plaintiff had only a modest chance of prevailing when the case was fully tried, it would make sense to grant the injunction pending the trial, against the chance that he might win after all. The plaintiffs in this case rely heavily on this approach, arguing that unless their chance of winning is "less than negligible" they ought to get the injunction. This is a garbled version of the circuit's standard, which is that the plaintiff must show that its chances " 'are better than negligible.' " *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 387 (7th Cir.1984). But there is a deeper problem with the plaintiffs' argument: they have failed to show that the injunction is necessary to avert any harm to them, let alone to avert massive harm not offset by comparable harm to the defendant if the injunction is granted. The requirement that a plaintiff show that its chances for winning on the merits are better than negligible is a necessary rather than sufficient condition for the grant of a preliminary injunction.

■ The terms of the distribution contracts, entered into by mature businessmen who do not claim to have been hoodwinked or coerced, scotch any contention that the plaintiffs face irreparable harm—harm not fully compensable by an award of monetary relief by the arbitrators—as a result of the termination of the contracts. Contemplating the possibility that the defendant might terminate these contracts with only thirty days' notice, and the consequences if it did so, the plaintiffs agreed that if that happened their only remedy would be to seek a monetary award by an arbitrator—even if the Tribune Company was acting wrongfully, that is, was breaking the contracts rather than terminating them in accordance with their terms. The plaintiffs could have negotiated for some form of equitable relief in the event of termination but they evidently decided that monetary relief would be adequate and expressly waived any other form of remedy. They argue now that they never surrendered their right to seek equitable relief *from a court* in the event of an unjust termination, but we cannot understand how this jibes with the provision in the agreements that makes arbitration the parties' "exclusive remedy to resolve *any* dispute concerning the termination of a Distributor" (emphasis added). In any event, both the elaborate provisions for monetary relief in the distributor agreements and the disa-

vowal of equitable relief in the arbitration clause of the agreements are powerful evidence that the plaintiffs believed that financial compensation—which they can still obtain in arbitration—was an adequate remedy for the termination of the agreements.

 A prerequisite to a preliminary injunction, as to other forms of equitable relief, is a showing that the plaintiff's remedy at law is inadequate. See *id.* at 386. The principle embraces a case such as this, where the plaintiffs agreed that monetary relief in arbitration would be the only remedy for a breach of contract. Compare *Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981). Their present argument that arbitration would be "a hollow formality" unless the Tribune Company is enjoined from terminating the distributorship contracts itself rings hollowly, since the arbitral remedy in the contracts envisages that the distributor has been terminated and forbids the arbitrator to reinstate a terminated distributor, whether on a permanent or interim basis.

The waiver of judicial remedies in the distributorship contracts may or may not embrace a request for an injunction to correct a violation of the antitrust laws (more on this later), but if it does not, still that would not affect our evaluation of the issue of irreparable harm. A single injury is alleged: the termination of the distributor contracts. Whatever the theory on which the plaintiffs seek equitable relief, the remedial provisions in the agreements show that their remedy at law (as we may for these purposes describe monetary relief in arbitration) is adequate. This is not to say that the remedy specified in a contract is always the truest measure of a party's injury in the event of breach; the refusal of courts to enforce contractual penalty clauses, see, e.g., *Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1288–92 (7th Cir.1985), suggests it is not. In this case, however, there is no reason to doubt either the propriety or the adequacy of the remedial measures to which the plaintiffs agreed in the distributorship contracts.

A brief consideration of the merits, intended to be tentative rather than definitive, will provide additional reasons for our conclusion that the plaintiffs have not made out a case for a preliminary injunction. The merits of the contract claim seem threadbare. The contract authorizes the Tribune Company to terminate distributors merely upon announcing a change in the method of distribution, and there can be no serious doubt that the method *was* changed; distribution by employees, by agents, and by independent distributors are well-known alternative methods of distribution in the newspaper industry. See, e.g., *Paschall v. Kansas City Star Co.,* 727 F.2d 692, 695 (8th Cir.1984) (en banc); *Auburn News Co. v. Providence Journal Co., supra,* 659 F.2d at 275; *Knutson v. Daily Review, Inc.,* 548 F.2d 795, 800–01 (9th Cir.1976); *Newberry v. Washington Post Co.,* 438 F.Supp. 470, 473 (D.D.C.1977); Oppenheim & Shields, Newspapers and the Antitrust Laws 72–74 (1981). If the method did not change, it is hard to see why the plaintiffs refused to accept reclassification as agents. And even if the termination of the plaintiffs was unauthorized, all that would follow is that they are entitled to 20 percent more money from the arbitrators; there would be no grounds for their asking a district court for an injunction.

The merits of the plaintiffs' antitrust claim are somewhat more substantial. In *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), the Supreme Court held that section 1 of the Sherman Act, 15 U.S.C. § 1, forbids a newspaper publisher to fix the retail price of newspapers distributed by independent distributors, even if the object of the "price fixing" is to prevent the distributors from exploiting the monopoly power conferred on them by the publisher's granting them exclusive territories. The decision has been much criticized, both in general and with specific reference to the newspaper industry, see Hovenkamp, *Vertical Integration by the Newspaper Monopolist,* 69 Ia.L.Rev. 451 (1984), for disserving consumer interests; and its authority has been cast in doubt by later decisions of the Supreme Court. In particular, as we noted in

*Jack Walter & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 706 (7th Cir. 1984), at the time *Albrecht* was decided the granting of exclusive territories to dealers was unlawful per se and therefore did not provide an attractive excuse for placing a lid on the dealers' prices. Now that such imposition is no longer unlawful per se—indeed, now that the Supreme Court is highly sympathetic to efforts by manufacturers to control the distribution of their product, see, e.g., *Business Electronics Corp. v. Sharp Electronics Corp.*, —— U.S. ——, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988)—it may be a valid excuse. The Court in *Business Electronics* cited *Albrecht*, but only for the definition of agreement, and not for the proposition that placing a ceiling over dealers' prices should be equated to placing a floor under those prices.

The plaintiffs have tacked *Albrecht* to another much-criticized decision, *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), which treated the consignor's setting of the price at which the consignee was to sell the consignor's goods as a form of illegal price fixing. We have interpreted *Simpson* as limited to cases where the agency relationship has no other purpose than to circumvent the rule against price fixing. See *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d 722, 725 (7th Cir.1986); *Morrison v. Murray Biscuit Co.*, 797 F.2d 1430, 1437–38 (7th Cir.1986). No such showing has yet been made here. Moreover, we can find no case where an agency agreement has been successfully challenged on antitrust grounds because it prevented the agent from *raising* his price. The facts of this case suggest why. Because most of a newspaper's revenues come from advertising rather than newspaper sales (80 percent, in the case of the *Chicago Tribune*), because advertising revenues depend on circulation, and because circulation is greater the lower the retail price of the newspaper, the Tribune Company has a vital interest in the cheap and effective distribution of its newspaper to the consuming public. It was not satisfied with the independent-distributor system, and after replacing its independent distributors in the City of Chicago with agents was able to bring down the retail price of the paper by 21 percent in the areas formerly served by those distributors. The result was a 23 percent increase in circulation in those areas, and a hefty increase in advertising revenues. The consumer, who occupies center stage in the contemporary jurisprudence of antitrust, was made better off, and so were the Tribune Company and the agents who replaced the distributors. The distributors were made worse off but only because their method of distribution was more costly (or at least higher-priced) than the agency system.

Although *Simpson* teaches that a manufacturer cannot circumvent the rule against price fixing just by calling independent distributors "agents," the agency contracts that the Tribune Company has substituted for the independent-distributor contracts create a bona fide agency rather than just a new nomenclature. The distributors bore the risks of loss of newspapers and of nonpayment by subscribers; those risks have now been shifted to the publisher, who also now deals directly with complaining customers and owns the assets used in the distribution-delivery function. If the new agents resemble the old distributors in the basics of their operations and service, equally the old distributors resemble employees of the Tribune Company who deliver the newspaper in parts of Chicago; all methods of distributing the same product have features in common. Consignment selling is a familiar and legitimate method of distribution; it was not outlawed by *Simpson*, see *Morrison v. Murray Biscuit Co., supra*, 797 F.2d at 1438, and is essentially the method adopted by the Tribune Company.

Since *Albrecht* and *Simpson* have not been overruled we hesitate to suggest that the merits of the plaintiffs' antitrust claim are "less than negligible," but that is not the test, and, even if it were, the plaintiffs would not have shown an entitlement to a preliminary injunction. The strength of a plaintiff's case does not change the requirement of showing that the remedy at law

(damages) is inadequate; one could have an open-and-shut case on the merits, yet if one's legal remedy were adequate one would not be entitled to a preliminary (or any) injunction. This observation is highly pertinent in the present case, a case in which the antitrust claim merges into the breach of contract claim. The plaintiffs are arguing that the Tribune Company terminated the distributor contracts because it wanted to fix prices, an unlawful motive inconsistent with "just cause" for termination. But, if so, the contracts spell out the remedies (including a 20 percent surcharge) and establish that equitable relief is unnecessary to protect the plaintiffs' interests.

An argument could be made that arbitrators are not authorized to decide questions of federal antitrust law with binding effect, and at one time the argument would have carried the day, see, e.g., *Applied Digital Technology, Inc. v. Continental Casualty Co.*, 576 F.2d 116, 117 (7th Cir.1978); *American Safety Equipment Corp. v. J.P. MaGuire & Co.*, 391 F.2d 821, 825–27 (2d Cir.1968)—but no longer. We took a first, cautious step away from the doctrine of the nonarbitrability of antitrust issues in *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 850–51 (7th Cir.1983) (by rejecting the corollary doctrine that arbitration must be stayed when antitrust issues "permeate" the issues to be arbitrated), and the Supreme Court rejected the doctrine altogether, for international transactions, in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Recently the Court relied on *Mitsubishi* in holding that claims under RICO (the Racketeer Influenced and Corrupt Organizations Act), a statute whose remedial provisions are closely modeled on those of the antitrust laws, are arbitrable. See *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Since RICO has nothing to do with international commerce, it seems unlikely after *McMahon* that the principle of *Mitsubishi* can be confined to international transactions. At all events, the plaintiffs in this case are in no position to argue against the arbitration of their antitrust claim when they tell us that far from wanting to reserve that claim for judicial determination they want the arbitrators to decide it and award them treble damages.

This suggests a further problem with the request for preliminary relief. Ordinarily such a request is designed to maintain the status quo pending a full trial of the plaintiff's claim. But what the plaintiffs are really seeking in this case is relief ancillary to arbitration. They want to be reinstated in the hope that if the arbitrators find a violation of the antitrust laws this finding can be used to induce the Tribune Company to rescind the change in its system of distribution. Yet in the distributor contracts the plaintiffs voluntarily surrendered any right to reinstatement. They want arbitration under the contract but do not want to abide by the limitations on the arbitrators' powers.

The order denying the request for a preliminary injunction is

AFFIRMED.