**CINDY'S CANDLE COMPANY, INC., an Illinois corporation, Plaintiff,**

v.

**WNS, INC., a Texas corporation, Defendant.**

**No. 88 C 1125.**

United States District Court, N.D. Illinois, E.D.

June 14, 1989.

---

William Van Hagey, David C. Bogan, Van Hagey & Bogan, Ltd., Mundelein, Ill., Drew E. Baker, Schulze, Baker & Associates, Hoffman Estates, Ill., for plaintiff.

Marc P. Seidler, Gary M. Sircus, Rudnick & Wolfe, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Cindy's Candle Company, Inc. filed suit against WNS, Inc. on February 8, 1988, seeking relief for various violations of state and federal law, as well as damages for breach of contract and intentional inter-ference with prospective economic advantage. Cindy's Candle originally wished to represent a class of persons similarly situated on some of these claims, but this court denied Cindy's Candle's motion for class certification. The court's principal reason for the denial was a perceived problem with Cindy's Candle's representation of the class, stemming from a dispute over whether Cindy's Candle's claims were subject to arbitration. This court held that there was a good chance that some of Cindy's Candle's claims were not subject to arbitration, while most persons in the proposed class had to submit to arbitration. For this reason it appeared to the court that Cindy's Candle would not be a proper representative.

Cindy's Candle has since amended its complaint, and has dropped its class claims. The Amended Complaint has six counts. Count 1 is a claim under the Clayton Act, as amended, 15 U.S.C. §§ 12 et seq. (1982). Count 2 is a claim under § 17.50 of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Code Ann., Bus. & C. arts. 17.41 et seq. (Vernon 1985). Count 3 is a claim for breach of contract; Counts 4–5 are claims under the Illinois Franchise Disclosure Act, Ill.Rev.Stat. ch. 121½, §§ 701 et seq. (1979), while Count 6 is a claim for intentional interference with prospective economic advantages.

Cindy's Candle hoped that it had stripped its complaint of every claim that raised the specter of arbitration. WNS now moves for a stay pending arbitration, claiming that Cindy's Candle cannot escape arbitration of its claims no matter how the company pleads.

WNS's argument stems from these facts. Prior to March 8, 1986, WNS had three agreements with Cindy's Candle, which licensed Cindy's Candle's operation of certain Wicks 'N' Sticks retail candle stores in Illinois. None of these licenses provided for arbitration of disputes arising under these agreements. On March 8, 1986, Cindy's Candle entered into a fourth license agreement, one for an entirely different store than the ones WNS had licensed previously. Like the previous agreements,

this one gave Cindy's Candle valuable rights to operate a Wicks 'N' Sticks store, use WNS's proprietary marks, and receive WNS's training and other sales assistance. This agreement also contained three clauses which particularly pertain to WNS's present motion:

XXI. *Applicable Law.*

A. This Agreement takes effect upon its acceptance and execution by [WNS] in Texas, and shall be interpreted and construed under the laws thereof, which laws shall prevail in the event of any conflict of law.

    *     *     *     *     *     *

C. Nothing herein contained shall bar [WNS's] right to obtain injunctive relief against threatened conduct that will cause it loss or damages, under the usual equity rules, including the applicable rules for obtaining restraining orders and preliminary injunctions.

XXII. *Arbitration.*

The parties agree that any and all disputes between them, and any claim by either party that cannot be amicably settled, except as to monies owed, ... shall be determined solely and exclusively by arbitration under the Federal Arbitration Act as amended and in accordance with the rules then obtaining of the American Arbitration Association or any successor at its office nearest the home office of [WNS], unless the parties otherwise agree in writing.

WNS submits that Article XXII mandates arbitration of all disputes between Cindy's Candle and WNS, unless specifically exempted. "All" means "all" in WNS's eyes, and includes disputes arising under previously executed license agreements. Cindy's Candle for its part argues that Article XXII does not reach back to cover disputes under previous agreements. It argues further that its present claims are for monies owed, which escape Article XXII, and that in any event its antitrust claim cannot be arbitrated as a matter of federal law.

In the parties' original briefs on this motion, much effort was spent on discussing what the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (1982), required this court to do. The court had to remind the parties that this was an incorrect approach to the issue—rather, an agreement to arbitrate is simply an agreement, and disputes over the interpretation of an agreement are, as usual, matters of contract law. The Supreme Court made this clear in a recent decision, one rendered after this court directed the parties to supplement their briefs:

> [Section] 4 of the [Federal Arbitration Act] does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that "arbitration proceed *in the manner provided for in [the parties']* agreement." ... [The Federal Arbitration Act] does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Info. Sciences v. Bd. of Trustees,* —— U.S. ——, 109 S.Ct. 1248, 1253, 1255, 103 L.Ed.2d 488 (1989) (emphasis and third set of bracketed material in original; citations omitted).

Cindy's Candle suggests that since Texas law controls interpretation of the March 1986 agreement, the court first must look to Texas law to see if Article XXII is a valid agreement to arbitrate under that law. The court begins its analysis of this question by noting that Texas law favors arbitration. Such arbitration is subject to two sets of rules in Texas: one statutory, see Texas General Arbitration Act, Tex. Rev.Civ.Stat.Ann. arts. 224 et seq., the other, common-law, see *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 351–52 (Tex. 1977). Under the version of General Arbitration Act which applies to the March 1986 agreement,[*]

---

[*] The Texas legislature repealed art. 224–1 in 1987, but it remains effective for contracts en-

Article 224. [A] provision in a written contract concluded upon the advice of counsel to both parties as evidenced by counsels' signatures thereto to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract....
Article 224-1. No agreement described in Article 224 shall be arbitrated unless notice that the contract is subject to arbitration under this Act is typed in underlined capital letters, or is rubber-stamped prominently, on the first page of the contract.

■ The March 1986 agreement does not fall within the scope of the Texas General Arbitration Act, as it does not bear the signatures of counsel for Cindy's Candle and WNS. Nevertheless, the agreement could be valid under Texas common law. The requirements for a valid arbitration agreement under Texas common law are not clear. Modern decisions refer to "common law rules" regarding validity, but never enunciate what those rules are. See, for example, *Lacy*, 559 S.W.2d at 351-52; *Gerdes v. Tygrett*, 584 S.W.2d 350, 351 (Tex.Civ.App.1979); *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex.App.1988). The closest that any court gets to describing these rules is *Manes v. Dallas Bible College*, 638 S.W.2d 143, 145 (Tex.App.1982), where the court stated that arbitration agreements "need not be in any particular form, but no party is under a duty to arbitrate unless by clear language he has so agreed and it must clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by their decision."

■ Cindy's Candle's sole contention as to the invalidity of Article XXII is a claim of non-mutuality. This argument rests on the interaction of Article XXII with Article XXI-C. The latter provision allows WNS alone to circumvent arbitration and apply to a court for equitable relief against "threatened conduct that will cause it loss or damages"—a fairly broad category of

harms. The March 1986 agreement makes this category broader still, as it states in Article XIII-J that any failure of Cindy's Candle to abide by certain post-termination covenants "will cause [WNS] irreparable injury...." Cindy's Candle thus asserts that Article XXII is not mutual, as the contract allows WNS to avoid arbitration in a vast number of instances.

In some jurisdictions courts will not enforce arbitration agreements which are not "mutually binding," such as when one party exclusively reserves the right to take all disputes to a court rather than to the arbitrator. See, for example, *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1549-50 (11th Cir.1985) (construing New York law). Cindy's Candle has not argued that Texas imposes such a requirement. Texas does have a common-law doctrine of mutuality of contractual obligations, and since arbitration contracts in Texas are subject to the general Texas common law of contracts, see *Callaway v. Albin*, 114 Tex. 5, 8, 261 S.W. 372, 374 (1924), this court will weigh Cindy's Candle's argument in light of general contract principles.

Unfortunately for Cindy's Candle, the Texas doctrine of contractual mutuality is a narrow one, and will be unavailing to it in this case. The court in *Texas Gas Utilities Company v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970), quoting *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 283, 253 S.W. 1101, 1105 (1923), summarized the Texas mutuality doctrine:

Reduced to its last analysis, the rule is simply that a contract must be based upon a valid consideration, and that a contract in which there is no consideration moving from one party, or no obligation upon him, lacks mutuality, is unilateral, and unenforceable. * * * It is quite elementary that the promise of one party is valid consideration for the promise of another party.

Accordingly, the *Barrett* court held that "[a] contract will be construed in favor of mutuality. The modern decisional tendency is against lending the aid of the courts

tered into before August 31, 1987. See 1987    Tex. Acts, 70th Leg., ch. 817, §§ 1–2.

to defeat contracts on technical grounds of want of mutuality." *Barrett,* 460 S.W.2d at 412 (citations omitted).

When analyzing whether a party has made a contract in which it gives nothing, the Texas courts look not at a particular clause, but at the entire contract. For example, in *Barrett,* the Texas Gas Utilities Company promised to deliver gas to Barrett's water well sites, endeavored to meet Barrett's gas demands, and installed the necessary meters at its own expense. The court held that these promises and actions were valuable, and thus rendered Barrett's promise to pay a minimum fee regardless of his gas use mutual. *Id.* at 412–13. See also *Holguin v. Twin Cities Services, Inc.,* 750 S.W.2d 817, 818–19 (Tex. App.1988) (promise mutual in light of entire series of exchanges).

Considering the March 1986 agreement in its entirety, this court holds that it reflects a mutual exchange of consideration. WNS granted Cindy's Candle the right to operate a Wicks 'N' Sticks store, use WNS's proprietary marks, and avail itself of WNS's expertise. Admittedly, it got something in return for these promises which it had not received in its earlier franchise agreements with Cindy's Candle: a promise to arbitrate certain disputes, notwithstanding WNS's right to seek equitable relief. A change in the terms of a bargain does not render it non-mutual, however; as noted earlier, the sole purpose of the Texas doctrine of mutuality is insuring that each party to a contract gives something valuable to the other party. Cindy's Candle may have given WNS an arm and a leg for its March 1986 franchise, but it received the franchise and other valuable consideration nevertheless. That is a mutual exchange under Texas law.

■ The March 1986 franchise agreement thus contains a valid promise to arbitrate disputes under Texas common law. In the past Cindy's Candle nevertheless could have escaped arbitration, merely by breaching its agreement to arbitrate. The Texas courts once refused to compel specific performance of agreements to arbitrate future disputes, although they allowed

frustrated opponents to recover damages. See authorites cited in *Lacy,* 559 S.W.2d at 352. The modern Texas Supreme Court has criticized the common law rule, declaring that it "evolved in an era when court congestion was not a major problem as it is today, and in modern times a policy encouraging agreements to arbitrate is preferable." *Id.* While the *Lacy* court declined to reject the traditional rule outright, two of the three Texas Appellate decisions addressing the issue since *Lacy* have taken *Lacy's* hint that the times have changed, and allowed enforcement of agreements to arbitrate future disputes. See *Olshan Demolishing v. Angleton Ind. School D.,* 684 S.W.2d 179, 184 (Tex.App.1984—writ denied, no reversible error) (allowing enforcement); *Mendoza v. Canizales,* 695 S.W.2d 266, 270–71 (Tex.App.1985) (declining enforcement); *Wetzel,* 745 S.W.2d at 81 (allowing enforcement). This court finds *Lacy's* reasoning to be sound, and will follow the lead of the majority of Texas Appellate Courts in allowing WNS to seek specific enforcement of Article XXII.

■ The next question is which disputes Article XXII covers. A few general principles of Texas contract law will guide this court's construction of Article XXII. First, as a general rule, when a contract is unambiguous, the court must construe the contract as a matter of law. See *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). Further, a contract is not ambiguous simply because the parties disagree over its interpretation. See *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727 (Tex.1981) (when parties differ over interpretation of unambiguous contract, court still must construe as a matter of law). A contract is ambiguous under Texas law only when the application of pertinent rules of interpretation to the instrument leaves it genuinely uncertain which of two or more meanings is the correct one. If after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning, it is ambiguous. If only one reasonable meaning emerges, the contract is not ambiguous. See *Rush-*

*ing v. Intern. Aviation Underwriters,* 604 S.W.2d 239 (Tex.Civ.App.1980).

Cindy's Candle never argues that Article XXII's phrases purporting to subject "any and all disputes" and "any claims" to arbitration are ambiguous. The company suggests instead that the court should insert the phrase "pertaining to this contract" after these phrases, as that is what the parties intended. Under Texas law, this court could insert such a phrase only if, upon reading Article XXII, considering it "in the light of the surrounding circumstances," and applying the "pertinent rules of construction thereto," it is clear that the parties intended to insert this limiting language. *Pinehurst,* 432 S.W.2d at 519. Otherwise, the court must not insert this language, as it would alter the ordinary meaning of the words which the parties actually employed. See *Praeger v. Wilson,* 721 S.W.2d 597, 601 (Tex.App.1986) (refusing to insert restrictive language into unambiguous contract granting interest in property subject to "any and all subsequent agreements" of the parties); *Glenn v. Gidel,* 496 S.W.2d 692, 702 (Tex.Civ.App. 1973) (refusing to insert language into unambiguous franchise agreement's cancellation clause in order to restrict right of cancellation to 90–day period following execution of agreement).

Unfortunately for the parties, they will have to brief this matter further. The court had requested supplemental briefs on all of the issues raised under Texas law, but allowed only five pages for the parties to do this. Cindy's Candle suggested in its supplemental brief that circumstances were such that the parties intended to insert limiting language, and that, moreover, such insertions are necessary to avoid violating Texas and Illinois franchise laws. Given that the prior agreements did not have arbitration clauses, and that the March, 1986 agreement granted a license to only one store, these arguments could have merit. The parties will thus have one last opportunity to address the arbitration issue.

■ Before sending the parties to do more research on Texas law, the court will address two other questions relating to Article XXII. Cindy's Candle suggests first that the parties did not agree to submit claims of the type which Cindy's Candle has brought before this court, and directs the court to Article XXII's phrase "except as to monies owed." Cindy's Candle suggests that all of its claims concern monies owed, as it seeks money damages in each count of its Amended Complaint. This argument assumes that a request for money damages is a request for monies owed. It is not. Damages are "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by violation of a legal right." Monies owed, by contrast, are amounts which one "is under an obligation to pay or repay in return for something received" or "is indebted in the sum of." Webster's Third New International Dictionary (1966). Damages do not become "monies owed" until a court reduces them to judgment—that is, declares them "owing." Under these common definitions, Cindy's Candle's claims for damages are not demands for "monies owed."

■ Cindy's Candle's second argument is that under federal law, its antitrust claims cannot be arbitrated notwithstanding the parties' agreement to arbitrate. This was formerly the law in this Circuit, under cases such as *University Life Ins. Co. of America v. Unimarc, Ltd.,* 699 F.2d 846 (7th Cir.1983). There Judge Posner, writing for the court, noted that antitrust disputes "are considered to be at once too difficult to be decided competently by arbitrators ... and too important to be decided otherwise than by competent tribunals." The Judge declared further that the "root" of this principle "is in the same soil as the principle ... that federal antitrust suits may not be brought in state courts." *Id.* at 851.

Apparently the Seventh Circuit has since discovered that the soil which nourished the principle of non-arbitrability of antitrust claims no longer supports the number of doctrines which it once declared grew there. In dicta in *Kowalski v. Chicago*

*Tribune Co.*, 854 F.2d 168, 173 (7th Cir. 1988), Judge Posner girdled the tree which he had fertilized in *University Life*, stating that "it seems unlikely" after *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), that domestic antitrust claims could continue to be non-arbitrable. In light of the aspersions cast upon the non-arbitrability doctrine in *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 632–36, 105 S.Ct. 3346, 3356–59, 87 L.Ed.2d 444 (1985), this court will adopt the Seventh Circuit's suggestion in *Kowalski*, and not withhold Cindy's Candle's antitrust claims from the arbitrators on grounds of federal law.

In summary, the court requests further briefing on whether, under Texas contract law, Article XXII's language covering "any and all disputes" and "any claims" covers disputes arising under the parties' previous agreements, in light of the surrounding circumstances and pertinent rules of construction. The clerk will set an appropriate briefing schedule. Cindy's Candle will have the first word.