**CINDY'S CANDLE COMPANY, INC.,**
**an Illinois corporation, Plaintiff,**

v.

**WNS, INC., a Texas**
**corporation, Defendant.**

No. 88 C 1125.

United States District Court,
N.D. Illinois, E.D.

Sept. 28, 1989.

---

**168**

William VanHagey, David C. Bogan, VanHagey & Bogan, Ltd., Mundelein, Ill., Drew E. Baker, Schulze, Baker & Associates, Hoffman Estates, Ill., for plaintiff.

Marc P. Seidler, Gary M. Sircus, Rudnick & Wolfe, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Cindy's Candle Company, Inc. and WNS, Inc. have briefed the issue raised by this court in *Cindy's Candle Co., Inc. v. WNS, Inc.*, 714 F.Supp. 973, 979 (N.D.Ill.1989), thus permitting the court to answer the question that has been at the heart of their wrangling these many months: does a franchise agreement dated March 8, 1986 for a WNS franchise at Stratford Square require the parties to arbitrate disputes arising under previous agreements relating to other franchises? The court concludes it does not.

Some preliminary points are in order. Cindy's Candle first asks the court to reconsider its ruling that the March 1986 agreement contains a valid promise to arbitrate disputes under Texas law. The cases which Cindy's Candle cites in support of its position, however, discuss the laws of states other than Texas. They do not persuade the court that the Texas courts would abandon the law discussed in this court's prior ruling. See *id.* at 976–77.

■ Cindy's Candle also asks the court to reconsider its ruling that Texas's common law permits specific enforcement of agreements to arbitrate. See *id.* at 977. Cindy's Candle presents the argument made by a dissenting judge in *Wylie Indep. School D. v. TMS Foundations*, 770 S.W.2d 19, 23–24 (Tex.App.1989) (Howell, dissenting), who observed that the Texas courts were somehow usurping the function of the state legislature in overruling the traditional common law in Texas that a party could not specifically enforce an agreement to arbitrate. While this court sympathizes with Judge Howell's dissent, this court's task is not to apply its own version of Texas law, but rather that version which the court believes the Texas Supreme Court would apply. See *Collins Co., Ltd. v. Carboline Co.*, 837 F.2d 299, 301 (7th Cir.1988). For the reasons stated in this court's earlier opinion, see *Cindy's Candle*, 714 F.Supp. at 977, and those expressed by the *Wylie* majority, see 770 S.W.2d at 22–23, this court believes that the Texas Supreme Court would allow specific enforcement of agreements to arbitrate under Texas common law.

■ Now to the parties' dispute over the March 1986 agreement. As the court noted in its prior opinion, the parties agree

that the agreement contains an unambiguous arbitration clause. They dispute its interpretation: Cindy's Candle argues that the clause applies to any and all disputes under the March 1986 agreement alone; WNS argues that it applies to any and all disputes between the parties, regardless of the source of the dispute. The parties agree that the court must adopt WNS's interpretation of the March 1986 agreement unless Cindy's Candle can show that, in light of the surrounding circumstances and the pertinent rules of construction, the parties intended to limit the plain language of their agreement. See *Cindy's Candle*, 714 F.Supp. at 977–78.

The parties agree that the most helpful indications of their intent lie within the four corners of the March 1986 agreement. See 14 Tex.Jur.3d Contracts §§ 186, 188. That agreement indicates that the parties intended the arbitration clause of the agreement to apply only to disputes arising from the agreement. The recitals of the agreement state that the intent of the parties was to allow Cindy's Candle to operate "*a* franchise." Article I of the agreement appoints Cindy's Candle as franchisee of one store; the license which WNS grants relates solely to that store. Article II covers the parties' payment arrangements, arrangements based on the financial operations of the Stratford Square franchise. Article V discusses duties relating solely to the "licensed business" and the "Designated Premises," Stratford Square. Article VI licenses WNS's proprietary marks "*only* to their use in connection with the operation of the licensed business at the Designated Premises...."

The many terms of the agreement thus indicate that the parties had in mind only their relationship respecting the Stratford Square franchise when they entered into the agreement. Further support for this view lies within the arbitration provision itself, Article XXII. That article exempts from arbitration disputes over violations of Article XII, ¶¶ A–B, and Article XI, ¶ B. The articles having these numbers in the Stratford Square agreement relate, respectively, to termination of the franchise on account of bankruptcy or other specified grounds, and termination on account of unauthorized assignment or transfer of the franchise. These are fairly standard contractual provisions, yet rather than using broad language (e.g., exempting "claims relating to violations of the type stated in Article XII"), the arbitration clause specifically refers to Article XII. WNS does not explain how disputes relating to violations of Article XII which are exempted in the March 1986 agreement would differ from similar disputes arising under prior agreements, such that the parties reasonably would have exempted the former but not the latter. WNS also does not contest Cindy's Candle's observation that, if applied literally, the articles enumerated in Article XXII would result in nonsensical exemptions under the parites' prior agreements.

These circumstances and the terms of the agreement indicate to the court that the parties intended Article XXII to apply only to disputes stemming from the March 1986 agreement, not the parties' prior agreements for other franchises. Accordingly, the court denies WNS's motion to stay the proceedings in this matter pending arbitration.